UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELLSWORTH EVARTS,<br><br>                Plaintiff,<br>  v.<br><br>QUINNIPIAC UNIVERSITY,<br><br>                Defendants. | Civil Action No.<br>No. 3:15-cv-1509 (CSH)<br><br><br>DECEMBER 10, 2017 |

**RULING ON DEFENDANT'S MOTION FOR LEAVE TO FILE<br>AMENDED ANSWER [DOC. 25]**

**HAIGHT, Senior District Judge:**

**I. INTRODUCTION**

Plaintiff Ellsworth Evans commenced this civil action against Defendant Quinnipiac University ("Quinnipiac') alleging that it discriminated against him on the basis of his disability in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq*. In particular, Plaintiff alleged in his complaint that from January 24, 2014, to June 28, 2014, Quinnipiac failed to "afford reasonable accomodation [sic]" after he had surgery, "sent [him] home," and "refused to [allow him] to return to work even after [his] surgeon released [him] for duty." Doc. 1, ¶¶ 7, 9. Plaintiff further asserted that Quinnipiac "insisted [his] FMLA [benefits] had expired."[1] *Id*. In his prayer for relief, Plaintiff requested backpay and other monetary damages, including "retirement benefits." *Id.*, at 4-5. He

---

[1] Plaintiff subsequently filed charges with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue letter on or about July 21, 2015. Doc. 1, ¶ 10. He maintains that he has the necessary documentation to show that the alleged discrimination occurred. *Id.*, ¶ 12.

1

also demanded a jury trial. *Id.*, at 5.

Pending before the Court is Defendant's motion for leave to amend its Answer to "assert a Seventh Defense alleging that, to the extent plaintiff is entitled to back pay, defendant is entitled to an offset in an amount equal to the wage replacements plaintiff received from defendant or any other sources for the time period starting with his putative medical release to return to work, with restrictions, following an extended leave of absence and continuing until his reinstatement." Doc. 25, at 2. The Court resolves that motion herein.

## II. DISCUSSION

"A district court has broad discretion to decide whether to grant leave to amend," so that the Second Circuit reviews such a decision only "for an abuse of discretion." *Copeland ex rel. NBTY, Inc. v. Rudolph*, 160 F. App'x 56, 58 (2d Cir. 2005) (quoting *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370, 404 (2d Cir. 2005)). Pursuant to Federal Rule of Civil Procedure 15(a)(2), the district court "should freely give leave [to amend] when justice so requires."[2] Moreover, pursuant to the seminal standard set forth by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962), "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

---

[2] Under Fed. R. Civ. P. 15(a)(1), a party may "amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)-(B). All "other amendments" may be made "only with the opposing party's written consent or the court's leave," which should be "freely give[n] . . . when justice so requires." *Id.* 15(a)(2).
  Although this is the first amendment Quinnipiac has sought with respect to its Answer [Doc. 12], that Answer was filed on August 1, 2016, so that the 21-day period to amend "as of right" – without the Plaintiff's written consent or the Court's leave – has expired. *Id.* 15(a)(1)(A). Quinnipiac must therefore seek leave from this Court to file its amended pleading pursuant to Rule 15(a)(2). As described *supra,* such leave will be "freely give[n]" if "justice so requires." *Id.* 15(a)(2).

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"

"The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver." *Odyssey Reinsurance Co. v. Cal-Regent Ins. Servs. Corp.*, 123 F. Supp. 3d 343, 356 (D.Conn. 2015) (quoting *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994)). *See also generally* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278 (3d ed. 2015) ("It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case[.]"). With respect to a set-off in particular, "iirrespective of whether a setoff claim is properly characterized as an affirmative defense, *see* Fed. R. Civ. P. 8(c), or a compulsory or permissive counterclaim, *see* Fed. R. Civ. P. 13, it must be set forth in the pleadings to provide a basis for relief . . . ." *Arch Ins. Co. v. Precision Stone, Inc.,* 584 F.3d 33, 42 (2d Cir. 2009) (citation omitted). The present motion to amend to add an affirmative defense is thus necessary to assert the defense at issue.

Examining the *Foman* factors, the proposed amendment has been presented in a timely fashion and in good faith, upon the emergence of relevant facts during discovery at the Plaintiff's recent deposition. Doc. 25, at 2. There is no indication of "undue delay, bad faith or dilatory motive on the part of the movant," *Foman*, 371 U.S. at 182. This is Defendant's first request to amend its Answer, which eliminates the possibility of any "repeated failure to cure deficiencies by amendments previously allowed," *id.* Defendant's counsel has represented that she "has inquired of plaintiff's counsel and he has no objection to this motion" to amend. Doc. 25, at 3. Absent objection by Plaintiff, no basis has been presented upon which the Court may find "undue prejudice" to Plaintiff

"by virtue of allowance of the amendment," *Foman,* 371 U.S. at 182. Although the amendment has been sought after the close of discovery, the facts relevant to the amendment (*i.e.*, what payments he may have received to defray his damages) are within Plaintiff's knowledge. Furthermore, there will be no delay in the case proceedings because Defendant represents that it "is already in the process of gathering the information necessary for evaluating the defense, having deposed plaintiff and served the discovery requests regarding plaintiff's damages claim on August 8, 2017." Doc. 25, at 3.

As to timing of amendments, the Second Circuit has held that leave to amend to add affirmative defenses may be granted even at the time of summary judgment. *See Estate of Hamilton v. City of New York*, 627 F.3d 50, 58 (2d Cir. 2010) ("[A] district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings.") (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003)). Therefore, although the proposed amendment is sought at the close of discovery, the facts giving rise to amendment were revealed near that close so that the request is reasonable under the circumstances.

Finally, the Court examines whether the amendment is "futile." In the case at bar, the proposed amendment, captioned "Seventh Defense," states as follows:

> To the extent plaintiff is entitled to back pay for the period he was absent from work after allegedly being released to return to work by his physician(s) (and defendant expressly denies plaintiff enjoys any such entitlement) defendant is entitled to an offset of damages in an amount equal to the wage replacements plaintiff received from defendant or any other sources in connection with the same absence.

Doc. 25-1 (Proposed Amended Answer), at 4.

Federal Rule of Civil Procedure Rule 8(c) requires that, "[i]n responding to a pleading, a

party must affirmatively state any avoidance or affirmative defense," including, *inter alia,* "payment." Fed. R. Civ. P. 8(c)(1). "An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'" *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's Law Dictionary 430 (7th ed.1999)). A setoff of an amount in damages may reduce, if not negate, an award of damages in the event the plaintiff wins the case.

In general, "[a] prevailing plaintiff in an employment discrimination action has a duty to mitigate his damages by exercising reasonable diligence in seeking substitute employment that is substantially similar to his former employment or risk having the amount of any damages awarded reduced by the amount that could have been earned." *Greenway v. Buffalo Hilton Hotel*, 951 F. Supp. 1039, 1059 (W.D.N.Y. 1997), *aff'd as modified*, 143 F.3d 47 (2d Cir. 1998). The purpose of such a rule is to make the plaintiff whole, not grant him a windfall.

As one district court in this circuit noted in an employment discrimination context, "[t]he 'make-whole' approach requires that victims of discrimination be 'restored to the economic position they would have occupied but for the intervening unlawful conduct of employers.'" *Munnelly v. Mem'l Sloan Kettering Cancer Ctr.*, 741 F. Supp. 60, 62 (S.D.N.Y. 1990) (quoting *Rodriguez v. Taylor*, 569 F.2d 1231, 1238 (3d Cir.1977), *cert. denied*, 436 U.S. 913 (1978)). "By the same token, the make-whole approach requires that recoveries be calculated in order to prevent plaintiffs from receiving an unwarranted windfall." *Munnelly*, 741 F. Supp. at 62. *See also Meschino v. Int'l Tel. & Tel. Corp.*, 661 F. Supp. 254, 259 (S.D.N.Y. 1987) (in ADEA action, discriminatory employer entitled to deduct pension benefits because these were "benefits which he would not have received had he not been terminated"); *Sinclair v. Ins. Co. of North Am.*, 609 F. Supp. 397, 400-01 (E.D.

Pa.1984) (offsetting severance payments against ADEA recovery for back pay where "Plaintiff experienced no hiatus in securing other employment" and "[t]he severance pay was not money which the plaintiff would have earned had he remained employed by defendants"). Moreover, a victim's efforts to mitigate damages through "interim earnings 'or amounts earnable with reasonable diligence'" must reduce any back-pay recovery. *Bonura v. Chase Manhattan Bank, N.A.*, 629 F. Supp. 353, 355 (S.D.N.Y.1986).

The defendant has the burden of proving that any particular amount must be deducted from damages awarded, if any, in this case. *Sims v. Mme. Paulette Dry Cleaners*, 638 F.Supp. 224, 231 (S.D.N.Y.1986). Moreover, Quinnipiac has not fully briefed the applicable law regarding set-offs. However, the Court notes preliminarily that the law in the Second Circuit remains somewhat unsettled as to whether and/or which collateral damages may be deducted from an award of back pay. *See, e.g., E.E.O.C. v. Yellow Freight Sys., Inc.*, No. 98 CIV. 2270 (THK), 2001 WL 1568322, at *1 (S.D.N.Y. Dec. 6, 2001) ("[C]ourts in this Circuit typically decline to set off benefits received from unrelated sources from back pay awards.") (citing *Shannon v. Fireman's Fund Ins. Co.*, 136 F.Supp.2d 225, 232 (S.D.N.Y.2001) (collecting cases)). *Cf. Wat Bey v. City of New York*, No. 01 CIV. 09406 (AJN), 2013 WL 12082743, at *22 (S.D.N.Y. Sept. 4, 2013) ("[T]he general rule in employment cases raising claims under federal law is that the Court has discretion to deduct from an award of damages payments received from collateral sources; this is known as the collateral source rule.") (citing *Dailey v. Societe Generale*, 108 F.3d 451, 459-461 (2d Cir. 1997)),[3] *aff'd sub*

---

[3] As District Judge Nathan noted in *Wat Bey v. City of New York*, No. 01 CIV. 09406 (AJN), 2013 WL 12082743 (S.D.N.Y. Sept. 4, 2013):

> This [collateral damage] rule can have problematic results, however, if the defendant, itself, is not the collateral source of the plaintiff's benefits. In those cases,

*nom. Rivera v. City of New York,* 594 F. App'x 2 (2d Cir. 2014); *Prince v. Suffolk Cty. Dep't of Health Servs.*, 205 F.3d 1324 (2d Cir. 2000)("[A] district court has discretion whether to deduct collateral sources of payment from a backpay award under Title VII," including worker's compensation, under Title VII.); *Greenway v. Buffalo Hilton Hotel*, 951 F. Supp. 1039, 1067 (W.D.N.Y. 1997) ("T]he Second Circuit has noted, in the context of an employment discrimination case, that 'while collateral source payments do represent an additional benefit to the plaintiff, we note a sister circuit's view that '[a]s between the employer, whose action caused the discharge, and the employee, who may have experienced other noncompensable losses, it is fitting that the burden be placed on the employer.' ') (quoting *Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 258 (2d Cir.1991), *cert. denied*, 502 U.S. 1060 (1992)); *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 795 (3d Cir.1985) (holding that social security benefits should not be set off from ADEA lost wages award), *cert. denied*, 474 U.S. 1057 (1986).

Here, Defendant is still developing its proposed "setoff" affirmative defense and wishes to preserve, rather than waive it. Defendant lists potential facts giving rise to that defense as follows:

> At his deposition on September 14, 2017, plaintiff testified to 1) wages that he received from defendant in the form of vacation, personal time, and sick time

---

deducting the third-party benefits would result in a windfall to the defendant, who did not provide the compensation, but who would benefit from the reduction in the damages award. Faced with the choice of granting a defendant this windfall, on the one hand, or granting the plaintiff a windfall, by allowing her to recover the full amount of her award regardless of the third-party benefits, courts have granted that benefit to the plaintiff, as the aggrieved party. *See, e.g, Meling v. St. Francis Coll.*, 3 F. Supp. 2d 267, 276 (E.D.N.Y. 1998) ("I prefer to confer the unavoidable windfall on the victim of discrimination."). As such, courts in this circuit typically limit this "collateral sources" rule to cases in which the benefits that the plaintiff received were paid by the defendant.

2013 WL 12082743, at *23.

> during a portion of his medical leave, 2) monies received from defendant's workers' compensation carrier for lost wages covering the entirety of this absence, and 3) a third-party settlement, which sum included monies intended to compensate plaintiff for lost wages covering the entirety of his absence. Each of these payments relate to the same absence from work for which plaintiff now seeks back pay as a remedy for defendant's allegedly discriminatory delay in reinstating plaintiff.

Doc. 25, at 2.

Under Defendant's reasoning, the alleged payments Plaintiff has received in this action may potentially reduce the amount of damages he sustained, if any, as the result of his termination by Plaintiff. Arguing that its proposed defense is not futile, Defendant asserts case law in this circuit holding that "[i]n federal employment cases, the decision as to whether or not to deduct benefits received from a collateral source, such as workers' compensation, from an award of back pay, rests within the sound discretion of the district court." Doc. 25, at 2 (quoting *E.E.O.C. v. Yellow Freight Sys., Inc.*, No. 98 CIV. 2270 (THK), 2001 WL 1568322, at *1 (S.D.N.Y. Dec. 6, 2001) (citing *Dailey v. Société Générale*, 108 F.3d 451, 460 (2d Cir. 1997)). Ultimately, Defendant will be left to its proof to demonstrate whether any particular amount should be properly deducted from a back pay award should Plaintiff prevail.

Although it is not certain which, if any, amounts it would be appropriate to "set off" from an award on the facts of this case, the Court cannot at this time find that the proposed affirmative defense would be "futile." As stated in its supporting memorandum, Defendant is "in the process of gathering the information necessary for evaluating the defense, having deposed plaintiff and served the discovery requests regarding plaintiff's damages claim on August 8, 2017." Doc. 25, at 3. Applying the liberal standard of *Foman*, the proposed amendment possesses potential merit so states a plausible affirmative defense. Leave to amend Defendant's Answer will be "freely given."

## III. CONCLUSION

For the foregoing reasons, pursuant to Federal Rule of Civil Procedure 15(a)(2), Defendant's "Motion for Leave to file Amended Answer" [Doc. 25] IS GRANTED, as "justice so requires." Quinnipiac must file its "Amended Answer," in the form set forth in the attachment to its motion [Doc. 25-1], on or before **December 21, 2017.**

It is SO ORDERED.

Dated: New Haven, Connecticut
December 10, 2017

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge